■ ALLCITY INSURANCE COMPANY, Respondent, v 601 CROWN STREET REALTY CORP. et al., Defendants, and PATRICIA BRADDY, as Administratrix of the Estate of HAZEL WILLIS, Deceased, et

al., Appellants. [693 NYS2d 141] —Judgment, Supreme Court, New York County (Ira Gammerman, J.), entered May 21, 1998, which, after a nonjury trial, declared that plaintiff Allcity Insurance Company is not obligated to represent or indemnify defendant 601 Crown Street Realty or defendant David Fischer, doing business as 601 Crown Street Realty Corp. (collectively, the landlord) in the underlying action for personal injuries and wrongful death based on the landlord's failure to cooperate, as required by the subject policy, unanimously reversed, on the law, with costs, and a declaration issued that plaintiff is obligated to defend and indemnify the landlord.

On December 6, 1987, there was a fire at the premises insured by plaintiff, resulting in the death of Hazel Willis and injury to Josephine Schuler. The underlying action against the landlord was commenced by Patricia Braddy, as Administratrix of the Estate of Hazel Willis, and Josephine Schuler on or about August 10, 1988. (Upon the death of Josephine Schuler, Tamara Braddy was substituted as her administratrix.) Plaintiff sent a series of notices to Elimelech Frydberg, the principal of the corporate owner of the premises, requesting his appearance at the deposition of the landlord, rescheduled from July 6, 1989 when it was first noticed. Despite language advising him of his duty to cooperate pursuant to the terms of the insurance policy, Mr. Frydberg failed to appear in response to seven such notices sent to him between January 9, 1991 and June 19, 1992. A letter of August 14, 1992, informing him of a "final" deposition date of September 22, 1992, failed to elicit his appearance. An Allcity inter-office memorandum of October 20, 1992 states: "Ass'd Mr. Fryberg [sic] refuses to cooperate. He says since we would not renew his policy he doesn't have to appear. EBT pending 11-17". Other memoranda contain identical information, except that the scheduled deposition date is listed as December 23, 1992. A final letter dated November 17, 1992, attempting to obtain his voluntary cooperation, advised Mr. Frydberg that "your continued non-cooperation will result in Breach of Contract and our withdrawal in this matter." Plaintiff finally resorted to a subpoena, which was equally unavailing in securing the witness's appearance for a deposition scheduled for June 14, 1993.

On August 24, 1993, Allcity sent another form letter to Mr. Frydberg, informing him of a September 14, 1993 deposition date and stating the insurer's intention to move the court to discontinue its defense of the landlord in the *Braddy* action. Six months later, the insurer contacted Samuel Sontag, whom Frydberg had identified as his personal attorney in a December

23, 1987 statement given to an investigator for Empire Insurance Group, Allcity's parent. This statement also identifies the building's superintendent and the landlord's managing agent.

The instant declaratory judgment action, in which the landlord has never appeared, was commenced in December 1994. On January 10, 1995, plaintiff Allcity sent the landlord a disclaimer letter, asserting, "Your [presumably Frydberg's] blatant refusal to cooperate in this matter is a violation of your insurance contract." Prior to Supreme Court's ruling in this matter, counsel for defendants argued, *inter alia*, that the carrier had waited an unreasonably long time to issue a disclaimer after becoming aware of the landlord's lack of cooperation.

In view of the failure to contact the managing agent or the superintendent of the building, both of whom had examined the premises after the fire, the insurer's efforts to secure the cooperation of its insured might be regarded as less than diligent (*see, Thrasher v United States Liab. Ins. Co.*, 19 NY2d 159, 168). In any event, its disclaimer is untimely, as "measured from the point in time when [the insurer] first learns of the grounds for disclaimer of liability or denial of coverage" (*Matter of Allcity Ins. Co. [Jimenez]*, 78 NY2d 1054). The internal memorandum of October 20, 1992 clearly reflects the lack of cooperation on the part of the owner of the building and provides the date from which the timeliness of the insurer's disclaimer can be assessed (*see, Consolidated Edison Co. v Hartford Ins. Co.*, 203 AD2d 83 [measuring time to disclaim from date of internal memorandum summarizing facts sufficient for disclaimer and finding four months unreasonable]). Indeed, Allcity alludes to the events described in the October 1992 memorandum in concluding, "It is clear that the attitude of the insured was willful and avowed obstruction."

As a matter of law, it was unreasonable for the insurer to wait until January 10, 1995, four years after its first notice of deposition was ignored, before issuing a disclaimer. The insurer's purported need for further time to investigate the lack of cooperation is, under the circumstances, implausible (*see, Allstate Ins. Co. v Macaluso*, 217 AD2d 424). Finally, we note that the dissolution of defendant 601 Crown Street Realty Corp. in 1993 renders any judgment that might be obtained against the corporation meaningless (*see, Thrasher v United States Liab. Ins. Co., supra*, at 168 [discussing public policy against penalizing innocent "plaintiff for the action of the insured over whom he has no control"]). Concur—Rosenberger, J. P., Mazzarelli, Rubin, Saxe and Buckley, JJ.